IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES TEUBERT,<br><br>          Plaintiff,<br><br>     v.<br><br>SRA INTERNATIONAL, INC.,<br><br>          Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 14-2875 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Dennis L. Friedman, Esq.
1515 Market Street
Suite 714
Philadelphia, PA 19102
     Attorney for Plaintiff

Steven K. Ludwig, Esq.
Franz K. Espanol, Esq.
Fox Rothschild LLP
2000 Market Street
Philadelphia, PA 19103
     Attorneys for Defendant


**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

In this employment discrimination action, Plaintiff Charles Teubert brings suit against Defendant SRA International, Inc. ("SRA"), his former employer, claiming that he was fired because he was undergoing cancer treatment. Defendant asserts that it terminated Plaintiff's employment after receiving complaints from his supervisors that he was insubordinate and acting

against the company's best interest during the course of competition for a contract with the Federal Aviation Administration. Plaintiff claims that his termination violated the Americans with Disabilities Act of 1990 ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). This case comes before the Court on Defendant's motion for summary judgment [Docket Item 48] and its motion to strike Plaintiff's responses in opposition [Docket Items 54, 55, & 56.] For the reasons that follow, the Court will grant both of Defendant's motions.

## II.  BACKGROUND

Plaintiff Charles Teubert was employed with Defendant SRA from July 2005 until June 2013. (Compl. ¶¶ 1, 5, & 7; Answer ¶¶ 1, 5, & 7.) SRA is a government contractor providing information technology and professional services to federal government clients. (Compl. ¶ 6; Answer ¶ 6.) Plaintiff worked as a program manager on an Airport Technologies, Research and Development Technical Support Contract with the Federal Aviation Administration ("the FAA Contract" or "the Contract"). (Compl. ¶ 8; Answer ¶ 8.) Plaintiff's job duties included managing a number of employees and subcontractors and overseeing SRA's performance and maintenance of the Contract. (Defendant's Statement of Material Facts ("SMF") ¶¶ 1-4, 8.) Plaintiff reported to Kenneth Tollstam, the Business Program Manager for the FAA Contract. (Kenneth Tollstam Deposition ("Tollstam Dep.")

2

at 8:3-14.) Tollstam reported to Donald Hirsch. (Id. at 8:1-2.)
Plaintiff also regularly interacted with (although was not
supervised by) Allison Patrick, a vice president of business
development who oversaw contracts including the FAA Contract.
(Donald Hirsch Deposition ("Hirsch Dep.") at 7:1-13; Allison
Patrick Deposition ("Patrick Dep.") at 5:6-6:18.) In or about
November 2012 Plaintiff was diagnosed with cancer and underwent
surgery followed by a course of chemotherapy treatments. (Compl.
¶ 10; Answer ¶ 10.) Plaintiff continued to work for SRA through
his treatment and updated Tollstam and other co-workers
periodically about his progress. (Compl. ¶ 11; Answer ¶ 11.)
Plaintiff's supervisors were supportive, rather than critical,
during his treatment. (See Def. SMF. ¶ 20; emails marked as SRA-
39, SRA-40, SRA-45, SRA-46, & SRA-47.) Plaintiff stayed on top
of his business responsibilities and addressed client needs
during treatment in 2013. (Teubert Dep. at 132:6-17.)

As a government contractor, Defendant is particularly
sensitive about demonstrating ethical behavior and upholding
regulatory requirements. (Tollstam Dep. at 41:4-12; see also
SRA-3 [SRA Employee Handbook]; SRA-7 [SRA Business Ethics and
Code of Conduct].) These company values were communicated to all
employees, including Plaintiff. (Teubert Dep. at 42:22- 46:7.)
Plaintiff signed a certification acknowledging his obligation to
comply with federal procurement laws, including statutes

3

relating to conflicts of interest. (Teubert Dep. at 58:5-59:7; SRA-9 ["Certification Regarding Conflicts of Interest and Procurement Integrity" signed by Charles Teubert on October 3, 2005].)

The FAA Contract overseen by Plaintiff was to run through June 15, 2015, but in 2013 SRA became aware that the FAA was preparing to solicit an early re-compete on the Contract despite having years and millions of dollars of ceiling left on the current contract. (Teubert Dep. at 115:10-18, 123:4-124:10, 224:23-21; Hirsch Dep. at 24:7-17; Patrick Dep. at 58:1-15.) If the FAA Contract were terminated early and Defendant did not recapture a new contract, the company stood to lose between $10 and $11 million in annual revenue. (Hirsch Dep. at 78:3-79:9.)

As the program manager in charge of the Contract, Plaintiff was expected to oversee the contract transition period and "ensure the company re-won the contract." (Patrick Dep. 92:19-94:6; see also Def. SMF ¶ 4; Teubert Dep. 197:10-22.) Nonetheless, in May 2013 he refused to manage the re-compete process and told Tollstam that it "wasn't something he was prepared to do." (Tollstam Dep. at 11:11-22; see also id. at 19:9-21:22; Patrick Dep. at 78:14-80:14, 83:17-84:9; SRA-61 [e-mail from Allison Patrick to Katie Wilver].) Plaintiff reiterated at a meeting on May 15, 2013 with Tollstam, Patrick, and other SRA employees that he would not work on the re-

4

compete, despite being reminded by his supervisors of his responsibilities. (Tollstam Dep. at 15:1-12; Patrick Dep. at 82:16-84:9; SRA-61.) Tollstam interpreted Plaintiff's "insubordinate" conduct at the meeting to mean that he was "not committed to the success of the company." (Tollstam Dep. at 16:13-17:6.)

On May 1, 2013, the FAA published a Market Survey which officially signaled the early re-compete of the FAA Contract. (See SRA-41 [email thread regarding New Contract Opportunities Posting at the FAA – Airport Technology Research and Development Technical/Engineering Support Market Survey]; Patrick Dep. at 69:11-72:21.) The next day, Patrick contacted her counterpart at Gemini Technologies, Inc., a small business subcontractor on the Contract, to ensure that the company would continue to work with SRA on the re-compete. (Patrick Dep. at 71:12-73:21.) Gemini informed Patrick that "they [were] going to pursue a different path for the competition of this follow-on contract" and would not participate in SRA's bid on the re-compete. (Id. at 74:2-5.) One of Plaintiff's former co-workers, Constantine Karmokolias, was a principal of Gemini. (Teubert Dep. at 37:19-38:14, 167:13-16.) Plaintiff told Patrick that his resume would appear in a competitor's proposal for the re-compete (Teubert Dep. at 197:24-198:9; Patrick Dep. at 41:18-42:22, 44:7-15, 48:16-49:2, 52:6-21.) Patrick and Tollstam began to believe that Plaintiff

5

was working with Gemini to secure the re-compete for Gemini.
(Tollstam Dep. at 40:1-8; Hirsch Dep. at 23:15-24:6, 84:4-85:7;
Patrick Dep. at 72:4-76:8; SR-54 at 41-43 [e-mail discussion
including Teubert, Hayhoe, and Karmokolias regarding Gemini's
re-compete bid, attached to SRA's self-report of Hayhoe's
conflict of interest].)

Patrick and Tollstam also began to believe that Plaintiff
was engaging in unethical behavior to sabotage the company's
chance at the re-compete. One of Gemini's employees was Gordon
Hayhoe, a former FAA employee who was subject to work
restrictions preventing him from working with the government on
SRA's contract, a project he had previously overseen from the
government's side. (SRA-25 at 3 [letter from FAA to Gordon
Hayhoe regarding post-employment restrictions.) When Hayhoe was
hired in March 2013, both Gemini and SRA certified to the FAA
that Hayhoe would work for Gemini on SRA's FAA Contract but
would provide only technical services and would have no contact
with government employees, consistent with his work
restrictions. (Teubert Dep. 112:2-115:9.) Plaintiff was aware of
these restrictions. (Id.) However, Plaintiff seemed to let
Hayhoe run a May 22, 2013 meeting between the FAA and SRA and
Gemini employees, much to Patrick and Tollstam's disapproval.
(SRA-54 at 2; SRA-61; Patrick Dep. at 92:8-13.) Even worse,
Hayhoe was disrespectful and unprofessional towards FAA

6

representatives. (Patrick Dep. at 23:7-29:4.) Tollstam and
Patrick confronted Plaintiff about this the next day. (SRA-61;
Tollstam Dep. at 35:17-21.) They told him this "put SRA at risk
by allowing a former FAA employee to participate at a meeting
that violated employee government restrictions." (Tollstam Dep.
at 34:2-9.) SRA ultimately self-reported the violation of
Hayhoe's work restrictions to the FAA in an attempt to head off
any harsh penalties. (See SRA-54.)

Considering all of this conduct in May 2013, Plaintiff's
supervisors concluded from this that he was "a senior employee .
. . not committed to the success of the company." (Tollstam
Dep. at 17:1-6; Hirsch Dep. at 23:10-24:6.) In consultation with
SRA's human resources and legal counsel, and on recommendation
of Tollstam and Patrick, Hirsch decided to terminate Plaintiff's
employment. (Hirsch Dep. at 7:14-8:6, 15:3-16:17; Patrick Dep.
at 106:10-107:19.) Plaintiff was terminated on June 18, 2013
when Tollstam read "talking points" to him at the New Jersey
facility. (Compl. ¶ 15; Answer ¶ 15; SRA-59 [Talking Points for
June 18, Discussion with Chuck Teubert].) Plaintiff was told he
was fired because of his attitude and performance. (Tollstam
Dep. at 20:11-15, 32:7-34:9; Hirsch Dep. at 71:7-73:8; SRA-59 at
1.) Hirsch and Patrick both testified that Plaintiff was
terminated for this course of conduct and not because of his

cancer treatments. (Hirsch Dep. at 82:8-22; Patrick Dep. at
80:8-14.)

Plaintiff filed the instant lawsuit alleging employment
discrimination in violation of the ADA and NJLAD on May 6, 2014.
After nearly a year and a half of discovery, Defendant filed the
instant motion for summary judgment. [Docket Item 48.] In
opposition, Plaintiff filed an untimely brief, a declaration in
opposition and response to Defendant's statement of undisputed
material facts [Docket Item 54], and a declaration and counter-
statement of material facts. [Docket Item 55.] Defendant moved
to strike these opposition papers. [Docket Item 56.]

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial
burden of demonstrating that there is no genuine dispute as to
any material fact and the movant is entitled to judgment as a
matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). Once a properly supported
motion for summary judgment is made, the burden shifts to the
non-moving party, who must set forth specific facts showing that
there is a genuine issue for trial. Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 250 (1986). In reviewing a motion for
summary judgment, the court is required to examine the evidence
in light most favorable to the non-moving party, and resolve all
reasonable inferences in that party's favor. Hunt v. Cromartie,

526 U.S. 541, 552 (1999); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party "'need not match, item for item, each piece of evidence proffered by the movant,'" but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. Boyle v. Cnty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

## IV. DISCUSSION

The ADA makes it unlawful for an employer "to discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the New Jersey Law Against Discrimination ("NJLAD"), an employer may not discriminate or take any unlawful employment practice "against any person because such person is or has been at any time disabled." N.J.S.A. 10:5-4.1. Analysis of a claim under the NJLAD follows

that of a claim under Title VII. Schurr v. Resorts Intern.
Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).

The burden shifting framework set forth in McDonnell
Douglas Corp. v. Green, 411 U.S. 792 (1973) applies to
discrimination claims under the ADA. Shaner v. Synthes, 204 F.3d
494, 500 (3d Cir. 2000). The McDonnell Douglas analysis proceeds
in three stages. First, the plaintiff must establish a prima
facie case of discrimination. McDonnell Douglas, 411 U.S. at
802. The burden then shifts to the defendant "to articulate some
legitimate, nondiscriminatory reason" for the plaintiff's
termination. Id. If defendant does this, the burden shifts back
to the plaintiff "to prove by a preponderance of the evidence
that the legitimate reasons offered by the defendant were not
its true reasons, but were a pretext for discrimination." Jones
v. School Dist. Of Philadelphia, 198 F.3d 403, 410 (3d Cir.
1999). Although this burden of production shifts from party to
party, "[t]he ultimate burden of persuading the trier of fact
that the defendant intentionally discriminated against the
plaintiff remains at all times with the plaintiff." Id.

**A. Defendant's Motion to Strike**

As a preliminary matter, the Court will address Defendant's
motion to strike Plaintiff's untimely opposition to its motion
for summary judgment. Defendant seeks to strike both of
Plaintiff's responses [Docket Items 54 & 55] on the grounds that

10

they are untimely and that the declarations violate Local Civil
Rules 7.2 and 56.1.

The Local Civil Rules provide opponents to summary judgment
the opportunity to contest the movant's statement of material
facts not in dispute and to provide a supplemental statement of
disputed material facts. Crucially, the Rules specify that these
statements must "cit[e] to the affidavits and other documents
submitted in connection with the motion to substantiate the
factual basis for opposition." L. Civ. R. 56.1(a). Plaintiff has
rarely done so in these submissions; instead, his commentary on
Defendant's version of the facts (Pl. Response to Def. SMF
[Docket Item 54]) and his own submission (Pl. Counter-Statement
of Material Facts ("CSMF") [Docket Item 55]) includes few
citations to the record.

Plaintiff takes the position that this commentary
constitutes a sworn affidavit and part of the evidentiary record
on summary judgment. Federal Rule of Civil Procedure 56 permits
the Court to consider affidavits in summary judgment
proceedings, but the Third Circuit does not require that this
Court credit "sham affidavits" that contradict an affiant's
earlier sworn deposition testimony. Jiminez v. All American
Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). To the
extent that Plaintiff's statements of fact constitute a new
affidavit that contradicts his earlier deposition testimony, it

11

will be disregarded as it cannot raise a genuine issue of material fact to defeat summary judgment. Id.; Jake Ball Trust v. Durst, Case No. 12-5255 (JBS/AMD), 2015 WL 7720481, at *1 n. 1 (D.N.J. Nov. 30, 2015).

Moreover, Rule 56.1 mandates that that the parties' statements of material fact "shall not contain legal argument or conclusions of law." L. Civ. R. 56.1(a). Plaintiff acknowledges up front that his declarations include legal statements and arguments written by his lawyer.[1] (Pl. Response to Def. SMF at 1; Pl. CSMF at 1.) He argues about the relevance of certain pieces of Defendant's evidence (see Pl. Response to Def. SMF ¶¶ 22-48), labels certain of Defendant's evidence as inadmissible hearsay (see, id. ¶¶ 49, 60, 61, 63, 71, 76, 82-88, 99), and concludes that many of Defendant's factual assertions are "credibility sensitive and, standing alone, without independent evidence, cannot be deemed to be an undisputed material fact for summary judgment purposes."[2] (Id. ¶ 20; see also ¶¶ 73-75, 82-95.) The

---

[1] This also runs afoul of L. Civ. R. 7.2(a), which restricts such submissions to "statements of fact within the personal knowledge of the signatory" and permits the Court to disregard arguments of fact and law contained in declarations, and Fed. R. Civ. P. 56(c)(4), which specifies that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge."

[2] Plaintiff argues that summary judgment would be inappropriate because a jury is necessary to make credibility determinations in this case. His assertion that "any motion for summary judgment based upon the testimony of defendant's witnesses, standing alone, is insufficient to support summary disposition,

Court finds inclusion of these arguments inappropriate in connection with a Rule 56.1 statement.

Plaintiff argues principally in his opposition to Defendant's motion to strike that his commentary and argument are necessary to point out that Defendant is not entitled to summary judgment on this evidentiary record. Plaintiff takes the position that most of Defendant's purported "undisputed material facts" are either opinions rather than facts, or are disputed but immaterial to Plaintiff's discrimination claim. While Plaintiff is correct that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence" in the summary judgment context, Fed. R. Civ. P. 56(c)(2), this must be done in a brief. The statement of material facts is not the vehicle for conveying these points.

Furthermore, contrary to Plaintiff's argument, these "opinions" can be undisputed material facts insofar as they provided Defendant with a legitimate, non-discriminatory reason for Plaintiff's termination. Plaintiffs must put those opinions into dispute and avoid summary judgment, not by averring that

---

without independent evidence" (Pl. Opp. Mtn. to Strike [Docket Item 59] at 3-4) is patently false. Neither the Federal Rules of Civil Procedure nor the Local Civil Rules dictate that a trial court must distinguish between deposition testimony and other forms of evidence and treat one as inherently more valuable or persuasive than the other on a motion for summary judgment.

they were "wrong," but by showing that they were pretext for
discriminatory animus. His assertion that "[w]here the opinion
is based on a set of underlying facts, a determination must be
made whether the opinion is based on all facts . . . ." (Pl.
Opp. Mtn. to Strike at 3) is incorrect as a matter of law. It is
not the Court's role at this juncture to decide whether
Defendant's proffered legitimate, non-discriminatory reason for
Plaintiff's termination was "warranted" (i.e. that Tollstam,
Hirsch, and Patrick's assessment of Plaintiff's performance was
accurate), but instead decide whether Plaintiff has shown that
that reason was likely a pretext for discriminatory animus.

Rather than aiding the Court in its disposition of this
motion, Plaintiff's submissions complicate the Court's task of
distilling the factual record in this case. Nearly all of
Plaintiff's submissions in opposition to summary judgment
constitute statements which cannot be considered as part of a
statement of facts.[3] Accordingly, the Court must disregard the
bulk of Plaintiff's statements of material fact and will

---

[3] Because the Court finds Plaintiff's statements otherwise
defective, the undersigned will not reach the question of
whether Plaintiff's statements should be stricken for
untimeliness when they were submitted between one and sixteen
hours past the deadline.

consider most of Defendant's statements undisputed for the purposes of this motion.[4]

## B. Defendant's Motion for Summary Judgment

The parties assume, and the Court will as well, that Plaintiff has presented evidence sufficient to establish a prima facie case of discrimination. Defendant argues that it is entitled to summary judgment because it presents two legitimate, nondiscriminatory reasons for Plaintiff's termination which Plaintiff cannot rebut as pretext for discriminatory animus. Plaintiff, in turn, argues that summary judgment in inappropriate because Defendant has not met its burden to show that there are no triable issues of fact. This motion requires the Court to decide whether Plaintiff has carried his burden at the third stage of the McDonnell Douglas analysis. For the following reasons, the Court will grant Defendant's motion for summary judgment.

### 1. Defendant's legitimate, nondiscriminatory reasons for Plaintiff's termination

Consistent with the second step of the McDonnell Douglas analysis, Defendant presents two legitimate, nondiscriminatory reasons for Plaintiff's termination. The second step "does not require that the employer prove that the articulated legitimate,

---

[4] The Rules allow for the Court to consider any fact not adequately disputed as undisputed for the purposes of this motion. L. Civ. R. 56.1(a).

nondiscriminatory reason was the actual reason for the adverse employment action. Instead, the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." Willis v. UPMC Children's Hosp. of Pittsburg, 808 F.3d 638, 644 (3d Cir. 2015). Defendant has plainly made this showing, offering two reasons for Plaintiff's termination: first, because he neglected his job obligations by refusing to assist in the re-compete of the FAA Contract and by disregarding company policies relating to conflicts of interest and ethics, and second, because he ignored instructions from his supervisors.

As a program manager (a senior level management position) for SRA on the FAA Contract, Plaintiff's job duties included managing a number of employees and subcontractors and overseeing SRA's maintenance of the Contract. (Def. SMF ¶¶ 1-4, 8.) Defendant contends that when the FAA notified the company that it wanted an early re-compete of the Contract, Plaintiff was expected to oversee the contract transition period and, as a team leader, "to ensure the company re-won the contract."[5]

---

[5] Plaintiff disputes that the FAA wanted to prematurely re-compete the Contract and maintains that the "re-compete was non-existent." (See Pl. SMF ¶¶ 49-52, 54-56, 58-64.) However, as discussed in Section IV-A, supra, the Court must disregard Plaintiff's disputes as communicated in his response to Defendant's Statement of Material Facts and his own Counter-Statement of Material Facts as they improperly raise legal arguments, deny Defendant's assertions without pointing to

(Patrick Dep. 92:19-94:6; see also Def. SMF ¶ 4; Teubert Dep. 197:10-22.) Plaintiff was aware of these responsibilities but instead told Tollstam that he would not manage the re-compete process and that it "wasn't something he was prepared to do." (Tollstam Dep. at 11:11-22; see also id. at 19:9-21:22; Patrick Dep. at 78:14-80:14, 83:17-84:9; SRA-61 [e-mail from Allison Patrick to Katie Wilver].) Plaintiff reiterated that he would not work on the re-compete despite being reminded by his supervisors of his responsibilities. (Tollstam Dep. at 15:1-12.)

Additionally, Tollstam, Patrick, and other SRA employees thought that Plaintiff was engaging in unethical behavior and sabotaging the company's chance at the re-compete on the FAA Contract. Plaintiff told Patrick that his resume would appear in a competitor's proposal for the re-compete (Teubert Dep. at 197:24-198:9; Patrick Dep. at 41:18-42:22, 44:7-15, 48:16-49:2, 52:6-21.) Tollstam, Hirsch, and Patrick believed that Plaintiff was working with Gemini, a subcontractor and competitor, and his friends, Karmokolias and Hayhoe, to secure the re-compete for Gemini, contrary to Defendant's Code of Business Ethics and Conduct, which Plaintiff had received and acknowledged. (Tollstam Dep. at 40:1-8; Hirsch Dep. at 23:15-24:6, 84:4-85:7; Patrick Dep. at 72:4-76:8; SR-54 at 41-43 [e-mail discussion

_____

specific facts in the record, and contradict his earlier deposition testimony.

17

including Teubert, Hayhoe, and Karmokolias regarding Gemini's
re-compete bid, attached to SRA's self-report of Hayhoe's
conflict of interest]; Teubert Dep. 53:10-54:14.) Plaintiff's
supervisors were also concerned that Plaintiff was aiding Hayhoe
in breaching the work restrictions placed on him when he left
the FAA for a job with Gemini; he was not allowed to communicate
with the FAA about SRA's FAA Contract, and Plaintiff was aware
of those restrictions. (Teubert Dep. at 109:16-115:9, 138:22-
139:3; Patrick Dep. at 64:21-65:14; Tollstam Dep. at 33:6-
35:6,41:4-12.) Taken together, Plaintiff's supervisors concluded
from this that he was "a senior employee . . . not committed to
the success of the company." (Tollstam Dep. at 17:1-6; Hirsch
Dep. at 23:10-24:6.)

When Plaintiff was terminated on June 18, 2013, he was
told that it was because of his attitude and performance.
(Tollstam Dep. at 20:11-15, 32:7-34:9; Hirsch Dep. at 71:7-73:8;
SRA-59 at 1 [Talking Points for June 18, Discussion with Chuck
Teubert].) Hirsch, and Patrick both testified that Plaintiff was
terminated for this course of conduct and not because of his
cancer treatments. (Hirsch Dep. at 82:8-22; Patrick Dep. at
80:8-14.) The Court is satisfied that Defendant has adequately
carried its burden at the second step of the McDonnell Douglas
analysis.

## 2. Plaintiff's rebuttal

Plaintiff concedes these are legitimate, nondiscriminatory reasons for Plaintiff's termination, but he maintains that summary judgment is not warranted because a jury might not find Defendant's offered reasons credible. Plaintiff maintains that Defendant's statement of facts is insufficient to carry the day because "many of defendant's factual assertions constitute inadmissible hearsay," because there is a genuine factual dispute over Defendant's factual allegations, and because "most of defendant's factual allegations are based upon the credibility-dependent, self-serving statements of Kenneth Tollstam, Allison Patrick and Donald Hirsch." (Pl. Opp. to Summary Judgment at 2.) Plaintiff's arguments hold no water, as discussed in Section IV-A, supra. Plaintiff also failed to show that his purported factual disputes are grounded in the record. "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 252 (3d Cir. 2010). Moreover, nowhere in either the Federal Rules of Civil Procedure or the Local Civil Rules is a mandate that a trial court deny a motion for summary judgment merely because the movant relies on deposition testimony without "independent corroboration."

Additionally, Plaintiff's objection that "many of defendant's factual allegations constitute inadmissible hearsay"

19

is meritless. (Pl. Br. at 2; see also Pl. SMF ¶¶ 49, 60, 61, 63, 71, 76, 82-88, 99.) Plaintiff advances hearsay objections against certain of the deposition testimony and emails Defendant relies on in its Statement of Material Facts, but the Court is satisfied at this point that there is a basis for admissibility. Defendant proffers that all of the challenged emails sent by Plaintiff are admissible as statements of a party opponent, Fed. R. Evid. 801(d)(2)(A), and those sent by his supervisors are admissible under the business records exception. Fed. R. Evid. 803(6). Furthermore, Defendant argues that evidence documenting the events leading up to Teubert's termination are offered not to prove the truth of the matter asserted (i.e. that Teubert actually did what Tollstam and Patrick say he did), but to show SRA's representatives' state of mind -- how Plaintiff's superiors perceived of his behavior and what documents they relied on when Hirsch, human resources, and SRA's legal counsel decided to terminate Plaintiff's employment. This is an acceptable non-hearsay use for this evidence where, as in discrimination cases, what matters is not "the truth of the allegations against plaintiff" but instead "what motivated the employer." McPherson v. New York City Dept. of Educ., 457 F.3d 211, 216 (2d Cir. 2006) (citing United States Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983)). This non-hearsay use renders the evidence admissible.

20

Instead, because the Court finds Defendant's record sufficient to establish that there are undisputed facts which entitle it to judgment as a matter of law, Plaintiff's only recourse is to demonstrate that the record contains evidence of pretext. The Third Circuit has explained that a plaintiff may defeat summary judgment at the third step of the McDonnell Douglas analysis "by pointing to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." Jones v. School Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999).

Plaintiff principally argues that Defendant's reasons for his termination – his refusal to take the lead on the FAA Contract re-compete process and his disloyal conduct – must have been false because he was an "exemplary" employee. (Pl. CSMF ¶ 18.) Because he does not think Defendant had cause to fire him, Plaintiff infers that "[t]he incredibly harsh action against plaintiff could only be explained by the fact that he had been diagnosed with cancer and potentially presented a problem to the defendant, in terms of staffing, productivity and compensation." (Pl. Opp. to Summary Judgment [Docket Item 55-7] at 5.) But even if true, the fact that Defendant made a wrong decision in firing

21

a competent employee does not by itself suggest that Defendant's reason was pretext. <u>Fuentes</u>, 32 F.3d at 765. A careful examination of the record reveals that Plaintiff has provided nothing besides a coincidence of timing to link his cancer diagnosis in November 2012 and his termination in June 2013. No reasonable juror could find on this record that Plaintiff's termination was motivated by his illness or treatment plan. In fact, Defendant has produced evidence showing that Plaintiff's supervisors were supportive, rather than critical, during his treatment. (<u>See</u> Def. SMF. ¶ 20; emails marked as SRA-39, SRA-40, SRA-45, SRA-46, & SRA-47.)

Nor has Plaintiff provided evidence of Defendant's prior conduct that would permit an inference of discrimination. The Third Circuit has explained that a plaintiff may resist summary judgment and demonstrate pretext by showing "that the employer has previously discriminated against the plaintiff, that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." <u>Jones</u>, 198 F.3d at 413 (citing <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 645 (3d Cir. 1998)). Plaintiff has made no effort to adduce evidence of prior discrimination against either him or other senior-level employees suffering from a disability.

22

Similarly, nothing in the record suggests that Defendant's articulated reasons are suspect. "To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." Shaner, 204 F.3d at 501 (quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994)). Plaintiff has failed to show inconsistencies in Defendant's record that call into question whether his supervisors actually believed he was insubordinate or acting against the company's best interest. His attempt to show weakness in Defendant's factual record by merely arguing against those facts without pointing out contrary evidence in the record falls short. Accordingly, Defendant's motion for summary judgment will be granted.

**V.   CONCLUSION**

An accompanying Order will be entered granting Defendant's motion for summary judgment.

| | |
|---|---|
| **June 14, 2016** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |